IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARLA FAYE HONEY                                                                  PLAINTIFF

                            v.                              Civil No. 10-2017

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                           DEFENDANT

**MEMORANDUM OPINION**

       Plaintiff, Marla Honey, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability, disability income benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

       The plaintiff filed her applications for DIB and SSI on June 6, 2007, alleging an onset date of December 30, 2006, due to low-back pain. Tr. 50, 101-112, 128, 136, 158. Her applications were initially denied and that denial was upheld upon reconsideration. Tr. . Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ"). An administrative hearing was held on December 22, 2008. Tr. 23-42. Plaintiff was present and represented by counsel.

       At this time, plaintiff was 51 years of age and possessed an eighth grade education. Tr. 38, 101. She had past relevant work ("PRW") experience as a poultry eviscerator, steel worker, saw-mill laborer, and cabinet maker. Tr. 38, 129, 146-153, 176-177.

On June 9, 2009, the ALJ found that plaintiff's status post laminotomy, status post diskectomy, osteoarthritis of the lumbar spine were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 52-57. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work involving occasional climbing, stooping, crouching, crawling, kneeling, and balancing. With the assistance of a vocational expert, the ALJ found plaintiff could return to her PRW as a poultry eviscerator, as this work did not require the performance of work-related activities precluded by her RFC. Tr. 57.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 9, 2010. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 10.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

2

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

AO72A
(Rev. 8/82)

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the relevant evidence reveals as follows. On December 5, 2006, Plaintiff complained of neck pain and indicated that she needed to change her blood pressure medications over to the Wal-Mart pharmacy due to cost. Tr. 221. Dr. Lance Barton diagnosed her with hypertension and neck pain. He switched her to Lisinopril HCT and administered three trigger point injections into her neck. Tr. 221.

On January 2, 2007, Plaintiff complained of pain in her right hip and tail bone and problems with her leg locking up on her. Tr. 220. Her right lumbar region was tender and muscle spasms were present. She had normal muscle strength and tone in her right leg with a positive straight leg raise test. Dr. Barton diagnosed Plaintiff with lower back pain, right lower extremity

4

pain, and improved hypertension. He then prescribed Anaprox, Skelaxin, and Lorcet. He also indicated that he would order an MRI if her pain continued. Tr. 220.

On January 8, 2007, Plaintiff continued to complain of back and hip pain. Tr. 219. She rated her pain as a six on a ten-point scale, and indicated that activity worsened it while lying in bed lessened it. An examination revealed tenderness in the lower lumbar region on the right with muscle spasm and a decreased range of motion secondary to pain. She also walked with a limp to the right leg and exhibited some weakness. Her straight leg raise test was positive on the right. Dr. Barton diagnosed Plaintiff with lower back pain, right lower extremity radiculopathy, and muscle spasm. He prescribed continued Triamcinolone and ordered an MRI of her lumbar spine. Tr. 219.

On January 10, 2007, an MRI of Plaintiff's lumbar spine revealed disk dessication and disk space narrowing at the L4-5 level with a large central and right paracentral disk herniation combining with facet hypertrophy to cause spinal and bilateral foraminal stenosis worse on the right than left. Tr. 209. Disk dessication and disk space narrowing was also evident at the L5-S1 level with degenerative endplate changes and degenerative facet changes causing mild bilateral foraminal stenosis. Moderate degenerative facet changes at the L2-3 and L3-4 levels were also apparent. Tr. 209.

On January 25, 2007, Plaintiff was referred to Dr. Joseph Queeney, an orthopedist, for a surgical evaluation of her lower back pain, as well as her right lower extremity pain. Tr. 214-215, 242-243. She indicated that she was using a dolly to bring firewood into her home when she injured her back. The pain began radiating into the right gluteal region and then into the right posterolateral thigh. Plaintiff felt her condition was getting a little better, but continued to experience constant pain exacerbated by all activity. It was relieved with rest. Dr. Queeney noted

5

that Plaintiff had not had any physical therapy for her condition. She had, however, tried medication including muscle relaxers, which helped a little bit. A straight leg raise test was positive on the right side at about 90 degrees with negative stretch signs. The strength in her lower extremities was normal except for markedly diminished right extensor hallucis longus. No real tenderness or muscle spasm was noted. X-rays, however, showed some rather dramatic arthritic changes throughout the entire lumbar spine, probably most pronounced at the L5-S1. Tr. 247. However, he detected no significant subluxation or dislocation. An MRI showed significant arthritic changes at the L5-S1 level and to a lesser extent at the L4-5 level. She also had a large herniated disk off to the right side at the L4-5 clearly causing displacement of the right L5 nerve root. Dr. Queeney diagnosed her with herniated nucleus pulposus at the L4-5 level, right lower extremity radiculopathy, and degenerative disk disease of the lumbar spine. He concluded that she did have a profound weakness of the right extensor hallucis longus and recommended surgical intervention. However, Plaintiff wanted to give it more time before undergoing surgery. It was explained that the longer she waited, the higher the likelihood of her having permanent and irreversible nerve damage. Plaintiff understood the risks, but still wanted to wait. Dr. Queeney prescribed physical therapy (under her protest). He advised her to follow-up in three to four weeks. Tr. 214-215, 242-243.

On January 29, 2007, Plaintiff advised Dr. Barton that Dr. Queeney wanted to perform surgery to repair her back. Tr. 218. She did not, however, want to undergo surgical correction. Plaintiff indicated that she was doing exercises at home and was getting better. She could now lie on her back. An examination revealed that the range of motion in her back was much better. There was no leg weakness with good muscle tone/strength. Dr. Barton diagnosed her with lower back pain with right lower extremity radiculopathy. He extended her work release for another

6

three weeks to enable her to try epidural steroid injections and refilled her Lorcet prescription. Tr. 218.

On February 16, 2007, Plaintiff underwent her first lumbar epidural steroid injection ("ESI"). Tr. 194-200. Records indicate that she was suffering from lower back pain and right leg radiculopathy after lifting and loading wood onto a dolly. She had been off work for six weeks and had been slowly improving until two weeks prior, when she lifted a 201 pound object and her pain returned. Plaintiff indicated that her pain was made worse by too much walking and improved with hot baths. She reported difficulty both working and sleeping, due to the pain. Plaintiff rated her pain as a nine on a ten-point scale. Tr. 194-200.

On March 1, 2007, Plaintiff was administered a second ESI. Tr. 190-194. Dr. Brett Whatcott noted that she was much improved. Plaintiff was advised to continue with decreased activity for two more weeks. Tr. 190-194.

On March 15, 2007, Plaintiff returned for her third ESI. Tr. 200-204. Dr. Whatcott noted that she was "overall quite improved." The first injection reportedly helped more than the second. Plaintiff was advised that she could increase her activity after two weeks. Tr. 200-204.

On March 30, 2007, Plaintiff requested that Dr. Barton release her back to work. Tr. 217. She stated that her pain was better since undergoing the ESI's. Dr. Barton noted that she continued to exhibit somewhat of a limp with a slightly positive straight leg raise test on the right. Dr. Barton released her to return to work on April 2, 2007, and prescribed Lorcet. Dr. Barton opined that he thought her condition would still require surgical correction, but Plaintiff stated surgery would be a last resort. Tr. 217.

On April 12, 2007, Plaintiff was referred back to Dr. Queeney for a second evaluation of her right lower extremity pain. Tr. 212-213, 240-241. In January, he had assessed her with a

7

significant herniated disk on the right at the L4-5 level with significant lower extremity radiculopathy and weakness in her right lower extremity. Although he had recommended she follow up with him in three to four weeks, Plaintiff had chosen to undergo ESI's instead. She underwent three ESI's with no improvement in her strength. At the time of her appointment, Plaintiff was awake and oriented and appeared to be in mild distress. A supplemental exam revealed diminished right extensor hallucis longus at the L4-5 and diminished right dorsiflexors. Dr. Queeney also noted that a recent MRI had shown disk degeneration at the L4-5 and L5-S1 levels with a large herniated disk off to the right side at the L4-5 level clearly causing significant compression at the right L5 nerve root. He diagnosed her with a herniated nucleus pulposus at the L4-5 level, right lower extremity radiculitis, and degenerative disk disease of the lumbar spine. Dr. Queeney recommended right L4-5 level microlaminectomy and microdiskectomy, but stated that she could have some permanent and irreversible nerve damage because she had let this go on for three to four months. He also discussed the possibility of performing fusion surgery to try and address her arthritis, but Plaintiff was not interested in this at all. Accordingly the microlaminectomy and microdiskectomy was scheduled. Tr. 212-213, 240-241.

On April 13, 2007, Plaintiff underwent a right L4-5 microlaminotomy and microdiscectomy. Tr. 230-234, 248-249. Plaintiff appeared to have tolerated the procedure well and was transferred to the recovery room. Tr. 230-234, 246.

On May 17, 2007, Plaintiff returned to Dr. Queeney's office for a follow-up. Tr. 211, 239. Her pain had significantly improved, and the pain was no longer radiating down into her right leg. The focus of her current complaint was on pain in the midline of the lumbar region. She did have some fleeting pain in her right gluteal region, but stated it had improved since surgery. Plaintiff was adamant that she could not work, but that she had to do something for money. She was in

between insurances, so there were many medications she could not afford. Plaintiff had called Dr. Queeney's office several times following surgery, requesting refills of Hydrocodone and he informed her it was rather unusual for a patient to be taking Hydrocodone one month after surgery. He switched her to Ultram, which she stated did not work. Dr. Queeney was of the opinion that her midline pain was likely due to arthritis and that she could take arthritis medication to treat it. As far as her leg pain was concerned, Dr Queeney stated he could do nothing aside from give it more time. Because she wanted medication for it, he prescribed Lyrica, but she stated she did not have any money to pay for it. Accordingly, he was at a loss for what to do for her. Dr. Queeney was of the opinion that it would be safe for Plaintiff to lift 25 pounds. At her request, he agreed to keep her off work for another month. Tr. 211, 239.

This same date, Plaintiff was evaluated by Dr. Barton. Tr. 216. H noted that she was four weeks post surgery and still in pain. She reported that her leg pain had improved, but her back pain had not. Plaintiff was given a Kenalog injection and prescribed Lorcet. Tr. 216.

X-rays of her lumbar spine taken this same date revealed a suspected old fracture of the posterior lateral 11th rib and two probable gallstones in the right mid-abdomen lateral to the L2 traverse process. Tr. 245. The five lumbar vertebral bodies were normal in height and alignment, but there was some disk space narrowing at the L5-S1 level and to a lesser extent at the L4-5 level. Prominent degenerative changes were also evident in the lower lumbar facets. Tr. 245.

On August 16, 2007, Dr. Barton completed a medical source statement. Tr. 262-264. He concluded Plaintiff could stand and/or walk less that two hours total during an eight-hour workday and sit less than six hours during an eight-hour workday. However, the remaining sections were marked through with an X. It is not clear whether Dr. Barton was stating no limitations were present or that Plaintiff was totally unable to perform the remaining activities. Tr. 262-264.

9

Although Plaintiff's counsel stated that he had questioned Dr. Barton and Dr. Barton meant to indicate that Plaintiff had no limitations in these areas, we believe that the ALJ should have requested clarification from Dr. Barton and included that information in the record so that this Court could determined whether substantial evidence exists to support his determination. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding that an ALJ is required to seek additional clarifying statements from a treating physician when a crucial issue is undeveloped). As the evidence stands, there is only one other RFC assessment and it was completed by a non-examining, consultative examiner who found Plaintiff capable of performing light work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 253-260. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). However, given Plaintiff's history and the evidence indicating that she continued to experience some pain and discomfort, we believe that an RFC assessment from a treating doctor is necessary before an accurate RFC assessment can be determined by the ALJ. Therefore, on remand, the ALJ is directed to recontact Dr. Barton and to submit interrogatories to him to review plaintiff's medical records; to complete a physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). He should be asked to opine as to Plaintiff's ability to lift, carry, climb, balance, kneel, crouch, crawl, stoop, and reach.

10

IV. **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of February 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)